Next case before us today is 23-2022, United States v. Sutton. Good morning, Your Honor. I want to speak on behalf of Alexander Sutton. The district court incorrectly increased Mr. Sutton's guideline sentencing range by 7%, 7-0%, when it applied to wrong legal standards. Could you speak up, please? I'm sorry to have to. It was the worst for the substantial financial hardship and sophisticated means adjustments. The district court's misunderstanding of the law meant that it sentenced Mr. Sutton as if he was among the worst offenders, in the sense that he was the most sophisticated and caused the most substantial financial hardship. Well, does that—I mean, there's no—the guideline doesn't require you to be among the worst, does it? It doesn't, Your Honor, but the guidelines and the examples— So it doesn't really matter if—I mean, if the court met the minimum standard to apply the guideline, whether or not he was in the worst category isn't really relevant here, is it? It's true, Your Honor. It's an illustration of the injustice that resulted from the misapplication of the guideline, but your right to the guideline itself doesn't require him to be in the worst of the worst. That's just the unjust result that came about because of the misapplication of the guideline. The Ninth Circuit in George was in a similar situation to what the court is in now, where it was construing a substantial financial hardship guideline for the first time. It reviewed the guideline de novo, and it required—and it concluded that the guideline required the sentencing court to consider whether the victim suffered a loss that was significant in light of their individual financial circumstances. And that meant that it required financial hardship to be measured against something else. So are you saying that the government, in order to prove by preponderance the substantial financial hardship enhancement, needs to provide bank records and some sort of empirical data from which you can make an inference on substantiality? It does need to provide some evidence to put into context the victim's individual financial circumstances, but I would not say that it presents such a burden that bank records or other financial documents would be necessary. So what would it be here? What is missing here? Here, for example, we don't have anything that gave the court, because the government didn't provide it, gave the court any idea about, for example, how big is this business? What is its revenue? Well, I think it did. I'm sorry. We know that Dr. Pei described the loss as about six years of income for both him and his partner, which I'm not great at math, but that means that combined it was $80,000 a year. The deficiency that we still have, even taking for granted what Dr. Pei said about his and his partner's income, is we don't know whether there is any relationship between his income and the income or the revenue or the budget of the business. And we have a case like the one in Davis where the court acknowledged that even though the CEO had stolen hundreds of thousands of dollars over a seven-to-eight-year period, in light of that business's $6 to $17 million operating budget, the loss didn't result in a hardship because the business had a lot more money than it was paying to its employees. Should we be thinking about Dr. Pei's partner here? Who's the victim? The district court seemed primarily to be interested in losses to Dr. Pei, to the natural person. Well, the loss was uncontested, right? The loss was not uncontested. And the victim, for purposes of that, is described as the business, right? I don't think that the court was that clear about what it was considering the victim to be. But I don't think it actually changes the problem for the district court because we don't have a meaningful picture of Dr. Pei's financial situation or the business's. So, for example, we know what Dr. Pei's income might have been during that period. We also know that there was a loss of a particular objective dollar amount or, for that matter, an increase in the borrowing costs. But without knowing how big the business is, we can't understand how meaningful those changes in the financial position is. The government suggests that as to the 1.5 percent increase in the borrowing costs, that that was not preserved. Can you speak to that? The issue about the increase in borrowing costs was something that was argued about directly at sentencing. But it seemed you focused there on causation, and now you're focusing on substantiality. We made arguments generally about there being an insufficient basis to judge the extent of the loss to the business or toward the individual. So we didn't use the particular words about that, but it was clearly part of the argument at time of sentencing. And we didn't need to use those particular words in that way to preserve it. So the district court understood what you were arguing. Absolutely. Absolutely. Thank you. One thing I want to point out also that happened at sentencing was the government's description of the loss as felt by Dr. Pai for his business, which is that the victim—I believe they're speaking about Dr. Pai here—experienced this crime as a substantial hardship, quote, in retrospect. That's in Volume 2, page 47. It's clear that they're thinking that when a person belatedly discovers a loss that is large, that it is painful. But that is not what this guideline is taking into consideration. We have a separate provision within this section to measure loss, and that is the primary measure of seriousness of an economic offense. Hardship is something different, and not in every case where somebody belatedly discovers a loss do they suffer hardship. Certainly it can happen. If I discover on the eve of retirement that my investment advisor has stolen half of my money, I'm going to have to change my behavior. I'm going to have to change my plans. Well, that's the testimony here. Testimony here is that he had to change his retirement plans. There is testimony to that. Unfortunately, we have no idea the extent of the changes that he had to make. For example, somebody could change their retirement plans by working an extra month. They could change their retirement plans by working an extra 10 years. We don't know how extensive that change in his behavior was. And without knowing that, we can't judge whether this was a mere inconvenience or it was a serious change in his lifestyle. So you agree that many of the—there's many relevant things, I think, but many relevant components of the applicable guideline are marshaled in the victim impact statement, right? The delay in retirement and such, right? And so you don't disagree that those are available under the guideline as examples of the sort of hardship that the guidelines envision are appropriate, correct? That's right. Okay, so really the only argument you're making, if I understand it correctly, is that there's not sufficient evidence by preponderance on substantiality. That's right. What I would—well, I would say two things. One is that the district court misunderstood the standard, which should require it to measure the loss against some standard. How serious is the loss? And you can't—without measuring that, you can't get from loss to hardship. So that's point one. Number two is that, yes, I would also, of course, argue that the government failed to meet its burden in that it didn't provide that second part for all of those instances of loss that Ron would just mention. So without saying—so if I say I lost a certain amount and this is how much money I have, that's a way to measure loss. That's a way to measure hardship, excuse me. Without that second piece with regard to Dr. Pye or with regard to the business, it doesn't complete the picture and makes it impossible for the sentencing court to make a judgment about whether there's substantial hardship versus something less. So you would argue that the Seventh Circuit is wrong when it defines substantial as at least more than a minimal or trivial impact? Yes, I would. And I think that it's very hard to square their construction of the guidelines as more than minimal with the examples that are given in the guideline itself as guidance to the courts about what does constitute substantial financial hardship. Bankruptcy, insolvency, those are things that no one would describe as—yes, they're more than minimal, but the standards obviously doesn't—that more than minimal doesn't describe that standard. And we have examples that the court has to consider when it's applying this guideline. But there's some tension between that Seventh Circuit case and the plain text of the guideline, wouldn't you agree? Yeah. Let me make sure I understand what you're saying correctly, which is that I think there is tension between the Seventh Circuit's statement involving more than minimal and the examples given in the guideline, which clearly are more than minimal. So yes, there is a tension. Yes, we're saying the same thing. Can I ask you how we should be thinking about the restitution that was imposed in this case in evaluating the substantial financial hardship enhancement, if at all? I don't think that it informs the sentencing order or this court's consideration of whether it's a substantial financial hardship. It's obviously an accurate fact, a measure of the loss, but that is different than hardship. In fact, the guidelines even make a distinction between harm in an economic context and hardship. Harm is just a dollar amount that is negative. Before you run out of time, would you turn to sophisticated means, unless there were more questions? Of course. Our position is that the sentencing court also committed an error of law in applying the sophisticated means guideline, and it is not in meaningful effect to the qualifier especially, because the guideline requires an especially intricate or especially complex means of carrying out the offense or hiding it from discovery. The court recited the words especially complex and intricate, but its findings were that certain elements of the offense were merely complex or merely intricate, meaning that it did not actually use the language that the guideline requires. So that's the first layer. The second layer is that we can see the difference between the kind of sophistication that Mr. Sutton used in committing his offense and the examples given in the guideline as examples, and also the examples that have come before this court over the last 10 years. Those examples are extremely sophisticated ways of carrying out offense that do not bear a great resemblance to what are the facts of this case committed by Mr. Sutton. Counsel, can I just stop you there? I think I heard you say that here the defendant was sophisticated, but just not sophisticated enough. You said he was sophisticated, but not like our other cases. Can you clarify that? Sure. Well, I wouldn't say it, but the sentencing court found that some of the elements of the defense were sophisticated, but it did not find that they were especially complex or especially intricate. Well, I'm actually looking at a quote from the district. I think he said, I can't remember if it's he or she, intricate and complex conduct in evading detection over an extended period of time and his use of multiple accounts and technical know-how. That is the court's recitation of the language, and then she describes the elements elsewhere in the record as, it's not a long record, but as complex or intricate, but not especially complex. And especially it's coming from the commentary, right? That's what you're saying? That's exactly right. That language, especially intricate and especially complex, it's in the guidelines. So the mere fact that it was recited at the time of sentencing, especially in light of the difference between... Well, when the court cites the standard correctly, don't we assume the court knows that that's what it's applying? I think the context here should give this court serious cause to consider whether the court was really holding this to the higher standard, especially intricate and complex, and not merely intricate and complex. I actually have one more question, if that's all right. So how would you define what the word especially means in the guideline? What does that, how do we evaluate that definition if it's not defined in the guidelines? Well, I think what I would expect a court to do generally is to look to dictionary definitions of the word especially and give that word meaning in the context of this guideline, especially taking into consideration just how sophisticated the example given in the commentary are. That's my definition, but I think at a minimum the definition would be extraordinary. Thank you. Good morning, Your Honor. Good morning, Your Honor. May it please the court, I'm James Braun on behalf of the United States. Over the course of nearly seven years, the defendant used his technical skills and his inside information about the business operations of houses in Giovanni to manipulate the business's payment methods so that he could divert nearly half a million dollars from payments that were supposed to go to the business to his own personal bank accounts. The district court concluded that the defendant's conduct gave rise to two guideline enhancements, that the offense resulted in substantial financial hardship and that it involved sophisticated means. In reviewing that decision, this court gives great deference to the district court's application of the guidelines to the facts. And indeed, the findings that this offense resulted in substantial financial hardship and that it involved substantial means is a factual finding that's entitled to the same deference as any factual findings a court makes at sentencing. And under that standard, this court should affirm the district court. Now, to begin, the defendant's offense level was determined under section, guideline section 2B1.1. And 2B1.1b2a provides for a two-level enhancement where the offense resulted in substantial financial hardship to one or more victims. And I think Judge Rossman asked as far as who the victims were considered. And the guidelines, I believe it's paragraph, I'm sorry, the pre-sentence report, I believe it's paragraph 26, I'm sorry, 16, states that the owner of House of St. Giovanni is considered the victim. Well, it's in paragraph 6, it's the victim is the business. The business and then the owner. The business and then the owner. So there's no daylight between those for purposes of evaluating the application of the loss enhancement or the substantial financial, is that correct? Right. And I think that's because this is a small business. Now, the application does provide a non-exhaustive list of six factors for courts to consider in making the determination of whether substantial financial hardship exists. And the district court here found that three of those apply. That Dr. Pye suffered substantial loss to a retirement fund, that he had postponed his retirement plans, and that he suffered substantial harm to his ability to obtain credit by being labeled high risk. So can we talk about each of those? Because I think that what I'm concerned with, and I think this is the opponent's primary argument, is that the government did not put the district court with the victim impact statement in a position to assess substantiality for purposes of the guideline. So Dr. Pye's statement marshaled the sort of hardship that he experienced, but there was no benchmark by which the district court could assess whether that was truly substantial for all of these examples. Well, I think that the victim, Dr. Pye, gave the benchmark. As Judge McHugh noted, that this is the equivalent of six years worth of income to Dr. Pye and his partner. And that shows right there that this isn't Bill Gates we're talking about. This is a small business where this was a substantial amount of money. We're supposed to think about the partner as well? I think it's, as the PSR notes, it's the owners of House of San Giovanni, and that would be Dr. Pye and his partner. And between the two of them, it's about $80,000 a year. And that was substantial to him. He himself, in his victim impact statement, wrote that it was very extensive, this financial loss, and that it took an enormous financial toll. Those words should mean something in the context of what he provided as the benchmark. And then he provided further detail about how he tried to refinance the business loan, and several banks wouldn't even deal with it because he had been labeled high risk. And his current bank would give him the refinance, but at 1.5% higher interest rate. But we don't know how long that loan lasted. We don't know in what way the 1.5% actually affected him in terms of assessing substantiality. I think he said it was over 10 years. Over 10 years. So that financial hardship would continue to affect him going forward. And so in addition to those three factors that the district court considered, the court also considered some other one. The fact that Dr. Pye wasn't able to expand the business as he had wanted to. That he wasn't able to make as many sales because several sales platforms had barred the business because of this. I'm not sure if it was because he was labeled high risk or just because of the fact that this had happened. And so that limited his ability to sell. So it's not as if—one thing that the district court simply said, it's a half a million dollars. That's a lot of money to anybody. That's substantial. But that's not at all what the district court did. The district court looked at very specific facts that were particular to this victim. And to show that this victim suffered substantial financial hardship. And at the end of the day, this is a very fact-specific inquiry. And as the 11th Circuit said in the Van Haas case, between a minimal financial loss and a devastating one, there's a wide range of losses. And in that range, district courts are expected to exercise their judgment. Guided by the non-exhaustive list of factors containing an application of four. And that's exactly what the district court did here. And certainly it was not clearly erroneous for the district court to find that there was substantial financial hardship on these facts. Now next, Section 2B1.1B10C provides for an additional two-level increase where the offense involved the defendant's use of sophisticated means. And here the defendant boils his conduct down to the individual acts of—I believe in his reply brief refers to it as choosing a payment processor and designating a bank account. But the cases make it clear that that's not the proper way to look at this. As this court held in the Snow case, the guidelines don't require that every step of the scheme be particularly sophisticated. Rather, you look at the scheme as a whole. And the 8th Circuit used similar language in the Garbaz case. But they went further in stating that repetitive and coordinated conduct, even though no one step is particularly complicated, can be a sophisticated scheme. And that's what we have here. We have repetitive, coordinated conduct over an extensive amount of time. And it's very similar to the Garbaz case in that respect, where the defendant there, over the course of six years, took money from the collection plates, basically, the sealed bags. He left some money behind. He took some for himself. The money that he left he put into secure bags that he had provided that he had bought on his own, and he forged some handwriting. That was considered sophisticated means. Here you have, over the course of six and a half years, the defendant engaging in repetitive conduct of at least twice a month for that amount of time, toggling back and forth between his bank accounts and the business bank accounts to move these payments around. So, if you could respond to your friend's argument about what makes this especially complex. What makes it especially complex is that repetitive and coordinated conduct over such an extensive period of time. And it's not like, and this may even be enough, but it's not like he chose one payment processor, one bank account, and he turned it on and he just sat back and waited until he got caught. Here, he did many things to avoid being caught and to make it less detectable. And as Dr. Pye said, even his accountants didn't find this out. So, you have him using multiple payment platforms, Stripe, PayPal, I think there were others, and moving them into eight different bank accounts over this extended period of time. And so, even though one step of this may not be particularly sophisticated or complicated, looking at this in the totality as the case law requires, it certainly meets the legal standard of sophisticated means. And again, the district court did not clearly err in making that factual finding. One of these cases that I'll talk about, whether it was sophisticated, you know, I keep coming back to sophisticated from what viewpoint? I mean, from my viewpoint, being able to set up the account in the first place is sophisticated. But if you look at the examples in the guidelines, guideline examples, they seem to require more than that. That we're talking about someone who really knows their way around a computer and a sophisticated, intricate, complex fraud scheme. And the guidelines gave some pretty extreme examples. They did. But it was a poor example, setting up an offshore account or setting things up in another district, that type of thing. But that's not an exhaustive list. But it isn't an exhaustive list, but I think the point that opposing counsel is making is that when they give a list, you know, it's sort of like Sesame Street. We're trying to find things that are like one another. And the argument is, this really isn't. Well, in the case of the guidelines examples, that doesn't have to go on for a long period of time. And so setting up something that's very complex for a short amount of time, that may be one thing. Here, where it goes on for so long and involves this repetitive conduct that's done in a way that makes it hard to detect and, in fact, wasn't detected. Under the case law, that is sufficient. Whether it's looking at this court's opinion in snow, talking about looking at the totality of the scheme, not just the individual acts, or this Garbaz case. The case law informs the guideline application, of course. And the cases do support what the district court did here. Unless the court has any additional questions of me, we would ask that the court affirm the district court, and I would yield the remainder of my time. Thank you. Thank you. In the last few minutes, Dr. Pai's business was described as a small business numerous times. And I want to point out that we have no idea how big or small this business is. Nobody said what its revenue is, how much it makes, what its surplus is, what its losses are. We just don't know. And it's a great example of how little we know about the big financial picture for this business and for Dr. Pai. Similarly, the idea that there is a substantial harm to retirement savings. We have no idea what Dr. Pai's retirement savings were, what his plan was for contributing to that retirement savings account. Without that information, we don't have anything to compare his losses against. We just can't say that it's substantial. And borrowing costs are another good example. If we knew, for example, that property leases accounted for 10% of the business cost, that would mean that there was an increase in cost of the business of 0.15%. That would be important to know when deciding whether that was a substantial increase in cost of the business. Without that information, we don't know. What are we to do with the extrapolation that the government is asking us to make here about the earnings per year for Dr. Pai and his partner? That we have that information from there can draw an inference that, therefore, this was a substantial hardship. It is substantial to them, but it is a lot of money for them. But we don't have enough information to know what the relationship is between the income to the owners and the total revenue of the business. We also know, because Dr. Pai describes it this way, that this is a nonprofit business, which suggests that there is not the same direct relationship between profits to the business or surplus to the business and money that goes to the owners. So there could be a vast difference between Dr. Pai's income and the total revenue of this business. We don't have the information, so we can't draw any inferences about what the relationship between that income might be in the total business. That's my conclusion. Thank you. Thank you. Thank you. We will take this under advisement.